FRANCES H. LOEBENBERG *vs.* STANLEY T. LOEBENBERG.

DECEMBER 10, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is a divorce proceeding which was heard by a justice of the superior court on the petition of each party to further modify that part of the final decree which, as previously modified, gave the parties joint custody of their only child Linda. Each sought sole custody. Decrees were entered denying the petitions and both parties have appealed to this court. There are also before us appeals from other decrees of the superior court but all of them have now become moot.

In March 1951 the superior court granted petitioner a divorce from respondent and awarded her the custody of Linda, then four years old. She took the child to California which she had a right to do under the decision. The final decree was entered in September 1951 and on Thanksgiving day 1951 petitioner remarried.

The final decree in the first divorce proceeding provided that respondent could have Linda during the summer vacation if her health would not be endangered thereby. The respondent agreed that it would be unwise for him to take the child the first summer, so soon after the parties had separated, and in 1952 petitioner persuaded him that Linda's health was not such that it would be wise to have her come east for the summer. The petitioner worked and, except for the short time that she was living with her second husband, she and the child lived with her parents. The evidence shows that Linda was far from well during most of the time she was with petitioner in California. She had bronchitis, trouble with her eyes, and did not seem to be doing well in school, and petitioner even had her examined by a psychiatrist. There is no evidence, however, that any of these conditions was the result of lack of care by petitioner.

The respondent remarried in 1952 and in 1953 he had Linda for the summer. The testimony shows that she was well and happy during that time and developed a strong attachment for respondent's second wife and her young son. That fall petitioner's mother was operated on and in March 1954 her father had a heart attack. As she stated, the house had a hospital atmosphere which she realized was not good for the child. In fact she began to ask to come east to "her Daddy," whereupon petitioner telephoned respondent asking him if he would take Linda *temporarily*. After consulting people whom he considered authorities on child care, he advised petitioner that, much as he would like to have Linda even temporarily, he was satisfied it would not be good for her to be shunted back and forth, and therefore he would not agree to a mere temporary visit. Whether petitioner got this letter before she left for the east is not clear.

After her arrival in Providence in March 1954 there was a series of conferences, mostly between the lawyers for the

parties, which resulted in a written agreement and then in a consent decree modifying the final decree so as to give the parties "joint custody." The agreement, which was signed by the parties and by their attorneys, provided that if the child adjusted herself to her new environment and proved to be happy with her father she should remain with him as long as she preferred to. The agreement also contained this sentence: "In substance, both parents are agreed that the happiness of the child and her future well being are to be the determining factors, rather than the personal wishes of either her father or her mother." The agreement was dated April 14, 1954 and on April 26 the final decree was amended to give the parties joint custody. The suggestion of joint custody came from petitioner's own lawyer.

After the entry of the decree petitioner returned to California and in July of that year married for a third time. In September 1954 petitioner gave up her employment, which she appears to have had up to that time, and in January 1955 moved into an apartment having an extra bedroom suitable for the child. Near the end of that month she wrote respondent that she was in a position to take Linda and wanted her. She left California that night before receiving respondent's reply to her letter and a week later arrived in Providence. She had difficulty seeing the child, although respondent did not deny her right to do so. He refused to let her have Linda claiming that she said she was going to take her back to California. She denies this but admits she became angry and "hung up" on respondent. Later petitioner was allowed to see the child. On February 8, 1955 she filed a petition to further modify the decree, which had been modified the previous April, so that she would have sole custody. The next day respondent filed a petition that the decree be modified so that he would have sole custody.

Both petitions were promptly heard, at which time the above facts were brought out. It also appeared at the hear-

ing that the child had become firmly settled in her new environment in Providence and was properly oriented and apparently happy. It further appeared that in the summer of 1954 Linda while visiting her father went to a summer camp at Athol, Massachusetts, and her letters to her father and stepmother which are in evidence show affection for them and for her stepbrother. The stepmother testified as to her regard for the child and of her impartial treatment of the two children.

The petitioner testified that it was her original intention to take the child to California *only temporarily*, but bearing in mind that this was in February and Linda was in school, the trial justice may well have felt that she did not want the child temporarily but permanently, as she said she wanted her to become adjusted in her home in California. The petitioner's husband came on from California to support his wife's attempt to regain the child.

The trial justice held the matter for decision and on June 16, 1955 final decrees were entered denying these petitions.

After reviewing the facts the trial justice stated: "The court feels that at this time the custody of the child should not be changed; that it is in the best interest of the child for her to continue to reside with her father for some extended period; that continual change of permanent residence as distinguished from a temporary change for vacation periods is not in the best interests of the child."

The reasons of appeal are numerous and for the most part argumentative. They are not referred to specifically in the briefs which are directed mainly to the correctness of the decisions on the petitions. The petitioner admits that unless the trial justice was clearly wrong his decisions will be sustained. It is to be remembered that the power and duty to regulate the custody of the children of parents whom it divorces is primarily in the superior court subject only to appellate review by this court. General laws 1938, chapter 416, §14.

The petitioner argues that during the hearing the trial justice stated that since he was considering petitions to modify the decree of April 26, 1954 rather than to set aside that decree, he was not concerned with the facts leading up to it. From this she argues that he did not consider the change of circumstances. Based on this premise she further argues that we should disregard his decisions and decide the case ourselves. The trial justice, however, went into the facts leading up to petitioner's trip to Providence and the change of the decree, and it was only after so doing that he made the finding above quoted that the best interest of the child required that she be allowed to reside with her father.

The petitioner argues that because she is now able to give Linda a good home she should have her, but the fact remains that the child was at the time of the hearing in the home of her father where she was well and happy. As we have stated, petitioner was not to blame for Linda's condition while she was with her in California, but the fact remains that at the time of the hearing the child was in good condition. While there is no reason to suppose the trial justice questioned petitioner's good intentions towards the child or that she did not have a suitable place to take her, he might well have felt that the best interest of the child at the time would not be served by uprooting her from her then satisfactory surroundings.

While admitting that the other matters before us are now moot, petitioner repeatedly brings to our attention the difficulties she experienced in the summer of 1955 in getting the child. These occurred *after* the decrees of June 16, 1955. Whatever effect they might have in the future if another application is made by petitioner for *sole* custody, they have no bearing upon the correctness of the decree entered before they occurred.

The petitioner calls to our attention the cases holding that the mother being fit should have custody of young

children, especially girls. We recognize this as a general guide in making a decision, but the controlling factor in cases between parents, as here, is always the best interest of the child for the time being. *Kelley* v. *Kelley,* 77 R. I. 229. We agree that the decree for joint custody was not conclusively binding upon the trial justice when he came to decide what was for the best interest of the child. In our opinion he realized and applied this principle in denying respondent's petition at that time. This is indicated by his decision wherein he stated: "The evidence adduced by respondent and his arguments would have been directed more sensibly to a petition to vacate the 'joint' custody decree because it was unwisely entered, *unwisely, that is, from the viewpoint of the parents.* I find, however, that this provision will not in its application adversely affect the child's welfare." (italics ours)

The petitioner argues that because the decree for joint custody resulted in this litigation it was unworkable. The respondent very properly points out that this is an equally good argument for his having sole custody. In fact he argues that when the trial justice found that the child should remain with him for a considerable period he should have gone further and given him sole custody. Whatever may be said in the circumstances from a practical viewpoint against joint custody those arguments do not prove which of the parents should have custody of the child. The petitioner pursues this line further by saying that the decree will lead to further litigation which will injure the child, but here again this does not prove that she rather than the father should have custody of the child. Rights of visitation in these decrees often result in difficulties between the parties but that does not mean that there should be no such provisions in the decrees.

The respondent argues in support of his appeal that since there was difficulty here and since petitioner has a right to have the child in the summer she may refuse to return her

from California because she has joint custody. The decree provides that the right of visitation belongs to the one with whom the child is not regularly residing. It is true the trial justice said that the decree meant that neither could change the joint custody without the consent of the other. In our judgment, however, he was then referring to regular residence rather than temporary vacations. Since the respondent has obtained custody of the child for the time being, he cannot now complain. The trial justice was of the opinion that the child should remain with the father and on the evidence we cannot say that he was clearly wrong.

The appeals of both the petitioner and the respondent are denied and dismissed, the decrees appealed from are affirmed, and the cause is remanded to the superior court for further proceedings.

*McGair, Weintraub & McElhiney, Samuel W. Weintraub,* for petitioner.

*Sidney L. Rabinowitz,* for respondent.