Dante J. GIAMMARCO

v.

Diane C. GIAMMARCO.

No. 2007–54–Appeal.

Supreme Court of Rhode Island.

Nov. 7, 2008.

John McCann, Pawtucket, for Plaintiff.

Diane C. Giammarco, pro se.

## ORDER

The defendant, Diane C. Giammarco, appeals a November 29, 2006 Family Court decision pending entry of final judgment resolving all financial aspects of her divorce with the plaintiff, Dante J. Giammarco.[1] The Family Court awarded 65 percent of the marital assets to the plaintiff and 35 percent of the marital assets to the defendant; in addition, it awarded to the defendant alimony in the amount of $200 per week for a period of three years. This case was scheduled to come before the Supreme Court for oral argument on September 23, 2008, pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not be summarily decided. Despite notice, the defendant, who has been proceeding on a *pro se* basis, did not appear at oral argument, and the plaintiff expressly opted at that time to rely on the arguments set forth in the memorandum he previously submitted to this Court. After examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we deny and dismiss the defendant's appeal.

The defendant raises several issues on appeal. First, she contends that the Family Court general magistrate made numerous evidentiary rulings that prejudiced her case. Most notably, she objects to the ruling that prevented her from submitting evidence of plaintiff's alleged extramarital affair with a particular client of his law firm.[2] The defendant argues that she should have been allowed to subpoena both the retainer agreements which the law firm had entered into with that client, and the time sheets and billing information relating to work performed on behalf of the client. Additionally, she argues that she should not have been prevented from

---

1. A final decree was entered on June 5, 2007.

2. Out of respect for the privacy of plaintiff's client, we choose not to identify the client by name in this order. We shall refer to her simply as "the client."

questioning plaintiff and the client with respect to their business relationship.

It is well established that the admissibility of evidence (*vel non*) is confided to the sound discretion of the trial justice; moreover, "this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." *Soares v. Nationwide Mutual Fire Insurance Co.*, 692 A.2d 701, 701–02 (R.I.1997) (mem.); *see also Ruffel v. Ruffel*, 900 A.2d 1178, 1190 (R.I.2006).

In the instant case, the Family Court general magistrate did allow defendant to introduce certain evidence that, in defendant's view, implied the existence of an illicit relationship between plaintiff and the client. The defendant introduced photographs of jewelry and women's clothing that she allegedly discovered in plaintiff's car; she contended that those items were intended as gifts for the client. The plaintiff testified that these gifts were, on the contrary, intended as gifts for defendant in the event of a reconciliation.

Additionally, the general magistrate examined voluminous telephone and cell-phone records documenting calls between plaintiff and the client. He found these records unsupportive of defendant's argument. Also, the client herself testified pursuant to a subpoena issued on defendant's behalf. The client noted that she and her husband had retained plaintiff to do legal work for their business. The client stated that plaintiff was working on many projects for the business that required him to be in regular contact with them. She further testified that she was the primary contact with plaintiff with respect to the various projects.

The plaintiff testified that, in addition to their professional relationship, he and defendant had a friendly social relationship with the client and her family. According to his testimony, he and defendant often socialized and vacationed with the client's family and had regular social contact with them, both in person and by phone. After considering the testimony of plaintiff and the client, the general magistrate found that the records documenting telephone calls between plaintiff and the client did not persuade him as to the existence of an affair.

In declining to admit the firm's retainer agreements and billing records, the general magistrate found such evidence to be irrelevant. Additionally, "[i]t is well established that communications by a client to [an] attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure. * * * As a part of that general rule, attorney-client communications are protected only if the privilege has not been explicitly or implicitly waived by the client." *Mortgage Guarantee & Title Co. v. Cunha*, 745 A.2d 156, 158–59 (R.I.2000) (internal quotation marks omitted). Although the client testified at trial, none of her testimony constituted an explicit or implicit waiver of attorney-client privilege because none of it concerned communications between plaintiff and the client that were made "for the purpose of seeking professional advice." *Cunha*, 745 A.2d at 158.

We hold there was no abuse of discretion when the general magistrate declined to require the client to waive the attorney-client privilege and testify as to details of plaintiff's legal work on her behalf. Defense counsel admitted that there was "no smoking gun" that would indicate the existence of an extramarital affair between plaintiff and the client, so it is unclear why the client's testimony or any additional evidence was necessary or relevant. We find no indication on the record that the

general magistrate abused his discretion by barring the presentation of this evidence.

The defendant also argues that the general magistrate misapplied the factors set forth in G.L. 1956 § 15–5–16.1 in deciding the proper distribution of the marital estate. She contends that the evidence produced at trial should have caused the court to order a more egalitarian distribution.

■ It is well established that "the equitable distribution of marital assets is left to the sound discretion of the trial court which is obligated to consider the factors prescribed by the Legislature in G.L. 1956 § 15–5–16.1." *DiOrio v. DiOrio,* 751 A.2d 747, 750 (R.I.2000) (internal quotation marks omitted). In distributing the marital estate, the general magistrate considered the relevant factors set forth in the statute including (1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) each party's contribution towards the acquisition, preservation, and appreciation of assets; (4) each party's homemaking contributions; (5) the health and age of the parties; (6) the occupation and employability of the parties; (7) the defendant's dissipation of $23,661 worth of marital assets, despite an order of the court to the contrary; and (8) the lack of dependant children.

■ The general magistrate expressly found defendant "to be totally at fault in the breakdown of the marriage." The general magistrate observed that plaintiff had made significant contribution towards the acquisition, preservation, and apprecia-

tion of marital assets, while defendant had "contributed little in terms of acquisition." Additionally, the general magistrate found that plaintiff had done most of the cooking during the marriage. In terms of the health of the parties, the general magistrate found that, although plaintiff suffered from stress, it did not negatively affect his employability. While he observed that defendant allegedly suffers from a "raft of maladies" for which she receives Social Security disability benefits, the general magistrate rejected defendant's assertion that she is unemployable as a result of those conditions.

Taking all these factors into account, the general magistrate concluded that defendant was entitled to a 35 percent share of the estate, amounting to approximately $288,750 less 65 percent of certain improperly dissipated funds, leaving her a balance of $273,371.[3] The plaintiff was awarded a 65 percent share of the estate. The general magistrate also ordered the parties to sell the marital domicile, which was valued by the parties at $275,000.[4] The general magistrate did not abuse his discretion in reaching this distribution, but rather quite properly relied on the factors set forth in the statute and applied said factors to the material evidence presented by the parties at trial.

■ Finally, defendant appeals from the general magistrate's award of alimony to her in the amount of $200 per week for a three-year period; she contends that the general magistrate disregarded evidence pertaining to her medical condition when

---

**3.** At the close of the trial, the general magistrate determined that $23,661 of the marital estate had been dissipated, and neither party could properly account for the missing funds.

**4.** An order of this Court, issued on April 28, 2006, stayed two elements of a Family Court order issued on March 10, 2006. This Court

stayed the portions of the Family Court order which directed that (1) the marital domicile be sold and (2) an affidavit from a Rhode Island doctor regarding defendant's medical condition be obtained. The divorce proceeding now being concluded, and the marital estate being settled, we vacate said order.

making his determination as to the amount of alimony. This Court has stated that "[a]limony is a rehabilitative tool intended to provide temporary support until a spouse is self-sufficient, and is based purely on need." *Berard v. Berard,* 749 A.2d 577, 581 (R.I.2000). In determining the amount of alimony, the court is required to consider "(i) [t]he length of the marriage; (ii)[t]he conduct of the parties during the marriage; (iii)[t]he health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and (iv)[t]he state and the liabilities and needs of each of the parties." *Vicario v. Vicario,* 901 A.2d 603, 611 (R.I. 2006) (internal quotation marks omitted).

■ The only evidence concerning the defendant's medical condition and employability was the affidavit of her treating physician, Dr. Carol S. Englender. Concerning the defendant's above-referenced "raft of maladies," Dr. Englender averred that defendant's health "status is permanent and is not expected to improve." Additionally, Dr. Englender opined that the defendant "will not be able to be gainfully employed at any time in the future." The general magistrate weighed this medical evidence against the testimony of multiple witnesses (including defendant herself), all of whom confirmed that she is healthy enough to regularly participate in several physically strenuous hobbies, including skiing and gardening. The general magistrate concluded that, in light of the defendant's share in the equitable distribution of the estate and her ongoing Social Security disability payments, $200 per week for a period of three years was a sufficient rehabilitative award of alimony. In light of these considerations, we perceive no basis for holding that the general magistrate abused his discretion in his award of alimony to the defendant.

For these reasons, the defendant's appeal is denied and dismissed in its entirety. The papers in this case may be returned to the Family Court.