**John M. THOMPSON**

v.

**Giselda M. THOMPSON.**

No. 2006–292–Appeal, 2007–245–M.P.

Supreme Court of Rhode Island.

June 25, 2009.

---

502

Lauren E. Jones Esq., Providence, for Plaintiff.

Jerome V. Sweeney, III, Esq., Pawtucket, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

The plaintiff, John M. Thompson (John or plaintiff), is before the Supreme Court on appeal from a Family Court amended decision pending entry of final judgment that awarded him an absolute divorce from the defendant, Giselda M. Thompson (Giselda or defendant), based on irreconcilable differences that caused the irremediable breakdown of the marriage.[1] On appeal, the plaintiff assigns error to several aspects of the trial justice's decision as it relates to the equitable distribution of the marital estate. The plaintiff also filed a petition for the issuance of a writ of certiorari seeking review of an order of a second justice of the Family Court that was issued after the appeal had been docketed in this Court. This second order adjudged the plaintiff in contempt for failure to make certain payments to the defendant and, additionally, directed the plaintiff to pay attorneys' fees in connection with the prosecution of that motion. The plaintiff challenged both the jurisdiction of the Family Court to issue the order because the appeal had been docketed in this Court, as well as the contempt finding and support orders made by the second justice. On September 10, 2007, this Court granted the petition for certiorari and it was consolidated with the appeal.

### Facts and Travel

John and Giselda were married on December 29, 1984. There were three children born of the marriage: Audrey, Emily, and Julie, all of whom were minors at the time of the divorce. John filed for divorce on April 24, 2002, based on irreconcilable differences that led to the irremediable breakdown of the marriage. As the trial justice described, this divorce was "a long and tortuous road through multiple motions, endless discovery[,] and continuances requested by both parties and their counsel."[2] The trial justice

---

1. In this opinion, we refer to plaintiff as John and defendant as Giselda for the purpose of clarity only, and we intend no disrespect by using their first names.

2. Additionally, Giselda changed lawyers three

heard testimony that spanned nearly fifteen months,[3] and on June 27, 2005, more than three years after the complaint was filed, he issued a seventy-seven page written decision that granted the divorce and distributed the marital assets.[4]

The trial justice first considered the custody of the three minor children. Based upon his review of the factors set forth in *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990), as well as an evaluation of the children that was conducted by a clinical psychologist, the trial justice ordered that the parties share joint custody of the children. Giselda was granted physical placement of the children, and John was awarded liberal visitation rights. This holding is not challenged on appeal.

The trial justice next conducted the three-step analysis required to determine the equitable distribution of the marital estate. After identifying the marital assets, the trial justice considered the factors set forth in G.L. 1956 § 15–5–16.1 and made several findings. He found that the parties were married for nearly eighteen years and that Giselda had exhibited many psychological issues during the marriage. However, the trial justice did not assign fault to either party; he did not fault Giselda for suffering from depression and other psychological difficulties, nor John for failing to fully appreciate his wife's problems. The trial justice found that both parties worked outside the home at different times during the marriage, contributed to the acquisition of their assets, and provided homemaking services and child care, although he noted that Giselda was the principal homemaker. The trial

justice also found that both parties were in good physical health, but that Giselda continued to be treated for emotional problems. In light of these findings, the trial justice distributed the marital estate equally between the parties, but deferred the sale of the marital domicile for the benefit of the minor children.

The trial justice next considered Giselda's request for alimony; he delayed this ruling and declared that when he had sufficient evidence establishing John's income, he would order him to pay rehabilitative alimony to Giselda. Although he did not award alimony to Giselda, he indicated that John would be required to pay (1) one-half of the principal and interest due on the first mortgage each month, (2) one-half of the principal and interest due on the equity loan each month, (3) one-half of the outstanding amount due on the real estate taxes each month, and (4) one-half of the real estate taxes as they come due each quarter. The trial justice also explained that he "must hear evidence as to current income in order to set a child support and medical payment order in accordance with the child support guidelines."

An order, characterized as a decision pending entry of final judgment, that incorporated the findings and rulings from the original decision was entered by the trial justice on October 11, 2005. The plaintiff filed his first notice of appeal on October 31, 2005. Notwithstanding this order, another year of contentious litigation ensued between these parties. One month after he issued the written decision,

times and engaged in protracted discovery efforts related to a Swiss bank account that she alleged John had established (although it was never uncovered).

3. This opinion will not recount in detail all the evidence presented at trial; we shall set

forth only those facts necessary to resolve the issues implicated in this appeal.

4. We note that fifty pages of the trial justice's decision simply recounted the testimony of the parties and their witnesses.

the trial justice conducted yet another hearing to determine whether an account in John's name, held by Wachovia Securities (Wachovia account), was marital property. An amended decision pending entry of final judgment was entered on November 3, 2005, in which the trial justice declared that the Wachovia account was marital property. This ruling is challenged on appeal. Additionally, although this decision failed to award alimony, the trial justice established the period of alimony as five and one-half years. The plaintiff appealed from the amended decision pending entry of final judgment on November 23, 2005.

On January 27, 2006, as contemplated in the amended decision pending entry of final judgment and before the appeal was docketed in this Court, the trial justice conducted another hearing to determine child support payments. On February 10, 2006, he issued an order that directed John to pay $1,500 per month in child support. Significantly, that order also required "[t]hat in addition to the $1,500 per month in child support [payable] on the [first] of each month beginning January 1, 2006, [John] is to pay $1,500 per month on the [first] of each month beginning January 1, 2006 from one of three marital assets which are: a) The Wachovia Command Account; b) The Fidelity Account; c) The Schwab Account." This additional and undifferentiated $1,500 payment from three discrete sources was designated neither as alimony nor child support.[5] By order of February 10, 2006, these amounts were incorporated into the final decree of divorce, which was entered on October 5, 2006. On February 15, 2007, John's appeal was docketed in this Court.[6]

On May 14, 2007, a second justice of the Family Court (hearing justice) held a hearing on defendant's motions to modify support and to adjudge plaintiff in contempt for failure to pay the additional $1,500 as required by the order of February 10, 2006. The plaintiff objected and argued that because the original appeal had been docketed in the Supreme Court, the Family Court lacked jurisdiction to consider defendant's motions.[7] The hearing justice rejected this argument, and after hearing testimony from the parties, she ordered John to pay the deductible for the family's insurance plan and directed the parties to share all uninsured and unreimbursed medical costs. The hearing justice also found that John was "under a continuing order to pay, not only child support, but $1,500 per month"; she concluded that John was in willful contempt of that order.[8]

An order reflecting the hearing justice's decision was entered on June 29, 2007, and, thereafter, John filed a petition for the issuance of a writ of certiorari and a motion for a stay with this Court. On

5. Heretofore, pursuant to temporary support orders, John had been responsible for paying $1,500 a month, in addition to paying the mortgage and expenses related to the home.

6. John avers that a stenographer's illness delayed the docketing of this appeal.

7. When plaintiff made his objection, the hearing justice stated: "Before you talk, the file is still here. You are telling me [defendant's counsel] did not make a motion to [remand] the file. Why is it still here if it is on appeal?" The parties informed her that the Clerk of the Family Court apparently had created a second file for new filings made after the original file had been transmitted to the Supreme Court. Notwithstanding the confusion over the file and the fact that the appeal had been docketed in the Supreme Court, the hearing justice proceeded because she was empowered "to tinker on issues of support."

8. The hearing justice also ordered John to pay Giselda's legal fees for his failure to attend a scheduled hearing in connection with the contempt proceedings.

September 10, 2007, this Court granted certiorari and issued a stay of the portion of the order that directed John to pay Giselda's legal fees. This Court also reduced the $1,500 payment ordered by the trial justice to $750, pending the outcome of the appeal. The record discloses that John has been paying $1,500 in child support, plus $750 in accordance with the order of this Court.

## I

## The Appeal

The plaintiff assigns error to several aspects of the trial justice's equitable distribution of the marital estate. Specifically, John contends that the trial justice erred by (1) finding that the money in the Wachovia account held in John's name was a marital asset despite the fact that it was a gift to him from Giselda's parents; (2) excluding a bank account in Giselda's name from the marital estate without allowing inquiry into the source of the funds; (3) failing to assign to Giselda debt that she had incurred when she unilaterally accessed a line of credit after an automatic stay was in place; (4) assigning certain credit-card debt to John; (5) ordering an equal distribution of the marital assets; (6) deferring the sale of the marital domicile; and (7) awarding Giselda rehabilitative alimony. We shall address these issues *seriatim*.

## Standard of Review

■ "The equitable distribution of property in a divorce action involves three steps: (1) determining which assets are marital property; (2) considering the factors set forth in G.L. 1956 § 15-5-16.1(a); and (3) distributing the property."[9] *Tondreault v. Tondreault*, 966 A.2d 654, 662 (R.I.2009) (quoting *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1277 (R.I.2007)). This Court conducts a deferential review of a trial justice's decision respecting the equitable distribution of marital property. "We do not disturb the trial justice's findings of fact unless it can be shown that he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Ruffel v. Ruffel*, 900 A.2d 1178, 1184 (R.I.2006) (quoting *Brown v. Jordan*, 723 A.2d 799, 800 (R.I.1998) (mem.)). The trial justice has broad discretion to determine the equitable distribu-

---

**9.** Upon divorce, G.L. 1956 § 15-5-16.1(a) provides as follows:

"In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:

"(1) The length of the marriage;

"(2) The conduct of the parties during the marriage;

"(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;

"(4) The contribution and services of either party as a homemaker;

"(5) The health and age of the parties;

"(6) The amount and sources of income of each of the parties;

"(7) The occupation and employability of each of the parties;

"(8) The opportunity of each party for future acquisition of capital assets and income;

"(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;

"(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;

"(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and

"(12) Any factor which the court shall expressly find to be just and proper."

tion of marital assets, and "we will not overturn the trial justice's distribution unless it is demonstrated that he or she has abused his or her discretion." *Tondreault,* 966 A.2d at 659 (quoting *DeAngelis,* 923 A.2d at 1277).

## 1

### Gift

■ The trial justice found that the Wachovia account, with a value of $30,000, was a marital asset, notwithstanding the uncontroverted evidence that the source of the funds was a gift to John from Giselda's parents. Giselda's mother, Eva Del Prete (Eva), testified that, in December 2000, she and her husband each gave $10,000 to John, for a total of $20,000, and also gave the same amount to Giselda. Eva also testified that, at the time they made the gift, they told the parties that the money "was to be put between [them] for [their] household." John and Giselda testified that they each contributed $5,000 to pay household debt and each deposited the remaining $15,000 of their own money into individual investment accounts. Giselda explained that her parents disbursed the money in four checks, two checks of $10,000 to each party, for "tax reasons"; apparently to avoid gift tax consequences.

The plaintiff argues that this money was not part of the marital estate because a gift from a third person to one of the parties shall not be assigned as marital property pursuant to § 15–5–16.1(b). The defendant responds that the trial justice properly considered the money to be a gift to the family as a whole, and not to John as an individual, because the "prohibition on the assignment of gifted property [in § 15–5–16.1(b)] was not designed to protect an in-law who had received funds for tax benefits."

The trial justice explained his decision to include the Wachovia funds in the marital estate as follows:

> "The [Del Pretes] gave this money * * * to the family, the husband and wife, collectively. They did not give him a little bonus for being the husband. They did it because of tax purposes. And whatever the tax purposes are from the federal government or state government's point of view is not for this Court to rule on. This Court is to rule on what was the intent of the parties * * *. And the intent [was clearly] * * * to make money available [to this family] utilizing the tax code * * * and, therefore, * * * it was not a separate and distinct gift to one or the other no matter how they call it and designate it."

We deem this finding to be clearly wrong.

■ The first step in the equitable distribution analysis requires the trial justice to distinguish between marital and nonmarital assets in accordance with § 15–5–16.1. *Ruffel,* 900 A.2d at 1187 (citing *DiOrio v. DiOrio,* 751 A.2d 747, 751 (R.I.2000)). Section 15–5–16.1(b) provides that "[t]he court shall not assign property or an interest in property which has been transferred to one of the parties by gift from a third party before, during, or after the term of the marriage." A valid gift requires a " 'present true donative intent on the part of the donor,' and 'some manifestation such as an actual or symbolic delivery of the subject of the gift so as to completely divest the donor of dominion and control of it.' " *Ruffel,* 900 A.2d at 1189 (quoting *Black v. Wiesner,* 112 R.I. 261, 267, 308 A.2d 511, 515 (1973)). Because the money that is the subject of this appeal was given to John with a present donative intent, we deem it a gift that is not part of the

marital estate.[10]

■ We note that both Giselda and the trial justice attached great importance to the Del Pretes' explanation that they structured the gifts as they did for "tax purposes." However, the Del Pretes' motivation for the gift is irrelevant to the analysis. The Del Pretes made an individual gift to John and did so to avoid paying a gift tax. The trial justice should have rejected their subsequent efforts to recharacterize the gift in a later judicial proceeding. "Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury * * *." *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir.1934) (Learned Hand, J.). In our judgment, however, a taxpayer cannot arrange his or her affairs one way to avoid certain tax consequences and then expect the courts to view the same transaction differently to avoid the consequences of that decision. Furthermore, there is no basis in the statutory language or our case law to support the proposition that the exemption for gifts provided in § 15–5–16.1(b) does not apply to a gift packaged in a manner intended to avoid the tax man.

## 2

### Fidelity Account

■ The trial justice excluded from the list of marital assets a Fidelity account in Giselda's name. John contends that the trial justice failed to determine the origin of the money in the account and therefore erred by excluding it from the marital estate. Giselda argues that the trial jus-

tice properly found that the funds in the Fidelity account were given to her individually by her mother and must be excluded from the marital estate in accordance with § 15–5–16.1(b).

There was ample evidence in this case that Giselda's parents were generous and provided individual gifts to both John and Giselda. Giselda and her mother both testified that the money in the Fidelity account was an individual gift from Eva to her daughter, and John has not pointed to any evidence that contradicts this testimony. We are not convinced that the trial justice overlooked any material evidence with respect to the Fidelity account or that he was clearly wrong to refuse further inquiry. Such a determination was well within the discretion of the trial justice, and we affirm his decision.

## 3

### Home Equity Loan

■ The trial justice declared that the equity line of credit secured by a mortgage on the parties' Cumberland home was a marital debt. In his lengthy recitation of the testimony, the trial justice noted that Giselda admitted that she had withdrawn $27,000 from this equity line of credit on May 13, 2002. However, the trial justice overlooked the fact that, pursuant to § 15–5–14.1, an automatic stay had been entered on April 24, 2002, that prohibited the parties from unreasonably incurring additional marital debt. The evidence establishes that Giselda was served with notice of the stay on May 10, 2002, three days before she withdrew the money.

---

10. John's account has a present value of more than $30,000, which the trial justice found to be the "result of pure appreciation without any more additions." "We have held that any income or appreciation derived from a gift is likewise exempt from assignment." *Ton-*

*dreault v. Tondreault*, 966 A.2d 654, 663 (R.I. 2009) (citing *Hurley v. Hurley*, 610 A.2d 80, 86 (R.I.1992)). Accordingly, the account's appreciation must be assigned in the same manner as the original amount deposited.

Section 15–5–14.1(c) provides that "[n]either party shall incur any unreasonable debts including, but not limited to, further borrowing against any credit line secured by the family residence, further encumbrance of any assets, or unreasonably using credit cards or cash advances against credit or bank cards." John argues that it was error for the trial justice to declare the entire amount of debt incurred against the equity line of credit to be marital debt and to refuse to hold Giselda responsible for borrowing $27,000 in violation of the automatic stay as provided in § 15–5–14.1. We agree.

The defendant claims that the money was necessary for household expenses because the temporary order provided inadequate support. However, the appropriate course of action under those circumstances was to seek a modification of the temporary support order or to ask the Family Court for permission to access the line of credit. Section 15–5–14.1 is designed to prevent the parties from incurring additional debt during divorce proceedings. Once served, a party is not free to violate an order of the Family Court with impunity, nor should a trial justice overlook such misconduct. The evidence disclosed that Giselda blatantly violated the automatic stay provision and, we conclude, the trial justice erroneously overlooked this evidence. In designating the entire equity line as marital debt without assigning to Giselda the amount she had withdrawn unilaterally, the trial justice erred. Accordingly, Giselda shall repay to the marital estate the $27,000 she withdrew from the equity line of credit in violation of the automatic stay.

### 4

### Credit–Card Debt

■ The trial justice declared that plaintiff and defendant individually would be responsible for "any credit cards or credit accounts" standing in the party's name. John argues that this was error because the credit-card debt that he incurred was for household expenses, "short-term cash-flow shortages," and payments toward Giselda's credit-card balances.

■ This Court will not disturb the equitable assignment of marital property if we are satisfied that the trial justice "considered the requisite statutory elements set forth in § 15–5–16.1" and "did not overlook or misconceive relevant and material evidence." *Tondreault*, 966 A.2d at 659 (citing *DeAngelis*, 923 A.2d at 1277; *Ruffel*, 900 A.2d at 1184). Although we are troubled by the dearth of findings on this issue, we are not convinced that the trial justice erred. Significantly, the record reveals that the parties agreed that John was responsible for producing income to support the family and Giselda was the principal homemaker. It is clear that much of the credit-card debt was incurred to pay for household expenses when John was unemployed. Although Giselda was responsible for some of this personal debt, ultimately John elected to use his credit cards to meet familial obligations as well as to pay Giselda's credit-card debt. Therefore, we affirm the trial justice's assignment of credit-card debt individually to each party.

### 5

### Equitable Distribution

■ In his decision, the trial justice held that, "[a]fter reviewing each of the factors set forth in Section 15–5–16.1 and applying them to the facts of this case, * * * an equitable assignment of the property requires that fifty percent of the marital assets be assigned to each party." John argues that it was error for the trial justice to grant an equal division of the

marital estate because, in so doing, he failed to consider Giselda's abusive conduct during the marriage. The plaintiff also contends that the trial justice's finding that Giselda's conduct resulted from emotional problems without expert testimony to support that conclusion was error. Giselda responds that the trial justice appropriately found that her emotional problems did not amount to fault on her part. Further, she argues that the conduct of the parties is only one of the factors relevant to the equitable distribution of the marital estate and that the trial justice properly considered all the factors before ordering an equal distribution.

A justice of the Family Court has broad discretion to determine the equitable distribution of marital assets, and this Court "will not overturn the trial justice's distribution unless it is demonstrated that he or she has abused his or her discretion." *Tondreault*, 966 A.2d at 659 (quoting *DeAngelis*, 923 A.2d at 1277). An important element of our review is to determine whether the trial justice carefully considered all the factors enumerated in § 15–5–16.1. *Ruffel*, 900 A.2d at 1184 (citing *Tarro v. Tarro*, 485 A.2d 558, 560 (R.I.1984)). This Court has declared that the conduct of the parties is only one of the many factors that the trial justice must consider. *Malouin v. Malouin*, 735 A.2d 210, 210 (R.I.1999) (mem.).

In the present case, the trial justice specifically addressed each and every factor listed in § 15–5–16.1 and made the following finding about the conduct of the parties:

> "The Court finds the plaintiff's testimony credible that from almost the commencement of the marriage, the wife exhibited [many] psychological issues. She struck out at the plaintiff with violence, vulgarity[,] and yelling. This predated the birth of the children wherein

concededly, she developed post partum depression. The husband was the one who sought counseling in the marriage and was able to get the wife to agree to the counseling. She subsequently received medication. The Court, however, does not find any fault or bad conduct in the traditional sense of the word. The wife cannot be criticized for the emotional problems that she has and continues to exhibit."

It is incumbent upon the trial justice to weigh all the factors listed in § 15–5–16.1 and fashion an equitable distribution of the assets based on his or her sound discretion. In the case before us, the trial justice conducted an analysis that balanced those factors. We are not convinced that an equal division of the marital estate, after a marriage that lasted nearly eighteen years and produced three children, was an abuse of discretion, notwithstanding defendant's behavior during the marriage. Accordingly, we affirm the trial justice's award of 50 percent of the marital estate to each party.

## 6

### Deferring the Sale of the Marital Domicile

▬ The plaintiff also assigns error to the trial justice's decision to defer the sale of the marital home. The trial justice found that it was in the children's best interests to reside with their mother in the marital domicile and that "[t]o uproot them from their home at this time would be in the Court's view, unconscionable." The trial justice stated that he would "make financial orders to assist the parties in making it financially feasible for the children to remain in the marital domicile at this time." He acknowledged that Giselda's parents had offered continued financial assistance if the sale of the home was deferred. John argues that because

this decision failed to account for his unemployment, it resulted in undue hardship. Giselda responds that the trial justice properly considered John's potential contribution, her parents' offer to provide financial assistance, and the best interests of the children, and therefore his decision deferring the sale should be upheld.

■ "A trial justice may allow a temporary delay in the sale of the marital residence and grant temporary exclusive use of the home to the custodial parent 'to minimize the adverse effect of divorce on the welfare of the children.'" *Malouin*, 735 A.2d at 210 (quoting § 15–5–16.1.1).[11] However, the trial justice first must determine whether the parties realistically can afford to do so. *Id.* at 210–11 (citing § 15–5–16.1.1). Only after first finding that it is economically feasible to defer the sale of the home, may the trial justice consider the best interests of the children. Section 15–5–16.1.1(b). The decision to grant or deny a request to defer the sale of the marital domicile rests within the sound discretion of the Family Court. *Malouin*, 735 A.2d at 211 (citing § 15–5–16.1.1).

In the case before us, we note that the sale of the home was deferred until the earliest occurrence of a list of conditions, including January 1, 2010.[12] Thus, because of the unacceptable delay in the resolution of this case, January 1, 2010, one of the conditions for the sale of the home, nearly is upon us. We therefore decline to disturb this ruling, and direct that the marital home be sold on or about January 1, 2010.

Nonetheless, we pause to note that the trial justice performed the analysis required by § 15–5–16.1.1(b) in reverse order. Specifically, the trial justice first determined that it would be in the best interests of the children to remain in the marital home and then declared that he would fashion an order to ensure that it was economically feasible to defer the sale. Section 15–5–16.1.1(b) does not contemplate a make-it-fit approach to this

11. Section 15–5–16.1.1 provides in pertinent part:

"(b) In any case in which one of the parties has requested a deferred sale of home order pursuant to this section, the court shall first determine whether it is economically feasible to maintain the payments of any note secured by a mortgage or other liens, property taxes, or insurance for the home during the period the sale of the home is deferred. In making this determination, the court shall consider the resident parent's income, the availability of spousal support, child support, or both spousal and child support, and any other sources of funds available to make those payments. The intent in requiring this determination is to avoid defaults on the payments of notes and resulting foreclosures, to avoid inadequate insurance coverage, to prevent deterioration of the condition of the family home, and to prevent any other circumstances which would jeopardize both parents' equity in the home. After making the determination that it is economically feasible to consider ordering a deferred sale of the family home, the court in exercising its discretion to grant or deny a deferred sale of home order, shall consider whether it is in the best interest of the child or children.

"(c) Upon a determination pursuant to subsection (b) of this section that a deferred sale of home order is indicated in order to minimize the adverse impact of divorce on the child, the court may make such an order. The order shall include the duration of the order * * *."

12. The trial justice ordered that the sale of the marital domicile be deferred until the earliest of the following occurrences:

"a. January 1, 2010.
"b. Re-marriage of wife.
"c. Wife's purchase of husband's interest in the property.
"d. Sale of the real estate.
"e. Death of the wife.
"f. Transfer of custody of Julie to the husband.
"g. Wife resides in said real estate with an unrelated third party."

difficult decision; the statute explicitly directs a trial justice first to determine feasibility and then, and only then, may he or she consider the best interests of the children.

Although it is clear to us that the trial justice understandably considered it best for the children to remain in the family home, in light of the financial resources of the parties, it is obvious that this decision was neither feasible nor correct. By conducting the analysis in the reverse order, a trial justice risks imposing undue economic burdens on one or both parties to achieve a desirable, but impossible, result.

## 7

### Alimony

■ We shall now address the ostensible award of alimony, which the parties addressed at length in their briefs and oral arguments. During the more than seven years that this case has languished, alimony has not been ordered. We deem this unacceptable and, frankly, incomprehensible. "[O]ur jurisprudence anticipates that all the issues in a divorce will be adjudicated in a single proceeding. Any exceptions to this requirement must be accomplished through Rule 54(b) of the Family Court Rules of Procedure for Domestic Relations * * *." *Cardinale v. Cardinale,* 889 A.2d 210, 226 (R.I.2006).

At the time the trial justice rendered his decision, John had lost his job and the trial justice concluded that he lacked sufficient facts to make an alimony award. He explained that "once the court has sufficient evidence of the husband's income status, it is the intent of the court to fashion the following rehabilitative alimony order." This hypothetical alimony award would have required John to pay on a monthly basis "half of the principal and interest due on the first mortgage," "half of the principal and interest due on the

equity loan," "half of the outstanding amount due on the real estate taxes which were in arrears," and, on a quarterly basis, "half of the regular real estate taxes as they come due." However, the trial justice failed to enter any order for the payment of alimony—a circumstance that raises serious questions about the finality of the amended decision pending entry of final judgment and whether the so-called final decree properly is before this Court. Notwithstanding our doubts about the procedural status of the appeal of this issue, in order to achieve a complete and final resolution of this painful litigation, we shall clarify the issue of alimony.

■ "[A]limony is a rehabilitative tool intended to provide temporary support until a spouse is self-sufficient, and is based purely on need." *Giammarco v. Giammarco,* 959 A.2d 531, 535 (R.I.2008) (quoting *Berard v. Berard,* 749 A.2d 577, 581 (R.I.2000)). It is prospective, not retroactive, in nature and is designed to provide support for a party until he or she can become self-sufficient. We are of the opinion that the window of opportunity for an award of prospective alimony is closed and there shall be no alimony in this case. However, in light of the order evenly dividing the marital assets and because we are granting the writ of certiorari, in an effort to equitably dissolve this issue, we hold that John shall be responsible, at the time the house is sold, for one half of the payments made or payable on the first mortgage and one half of all property-tax payments made while the case was pending in the Supreme Court or due at the time of sale.

## II

### The Petition for a Writ of Certiorari

■ This Court is confronted with a divorce case in which both sides have en-

gaged in active, protracted, and unseemly motion practice before the Family Court. The filing and docketing of an appeal with this Court has done nothing to stem the tide. Although we recognize that conflicts in need of judicial intervention may arise while an appeal is pending in the Supreme Court, this fact must be reconciled with settled law: when an appeal has been docketed in this Court, the lower court is divested of jurisdiction. Otherwise, the parties and the Family Court will venture into a procedural quagmire that unnecessarily consumes both personal and judicial resources.

It is well established that once an appeal has been docketed in this Court, the lower court no longer has jurisdiction. *Nichola v. John Hancock Mutual Life Insurance Co.*, 471 A.2d 945, 947 & n. 1 (R.I.1984); *Cavanagh v. Cavanagh*, 119 R.I. 479, 485–86, 380 A.2d 964, 968 (1977). This rule applies to motions that are pending before the lower court at the time the case is docketed. *See Devereaux v. McGarry's, Inc.*, 107 R.I. 325, 329, 266 A.2d 908, 910 (1970) (holding that the Superior Court did not have jurisdiction to rule on motions to dismiss that had been filed before the appeals were docketed in this Court).

■ To avoid the harsh consequences of this rule, a party may seek to remand the case temporarily for the resolution of motions for relief that are necessary and appropriate. *See Nichola*, 471 A.2d at 947 & n. 1 (holding that the Superior Court properly denied the plaintiffs' motion to vacate a judgment after an appeal was docketed in this Court because the plaintiffs failed to seek a remand to the Superior Court); *Cavanagh*, 119 R.I. at 485–86, 380 A.2d at 968 (holding that "once a case has been docketed [in the Supreme Court] it is no longer before the trial court and that court can take no action on it until the papers are remanded there");

*Hurvitz v. Hurvitz*, 44 R.I. 243, 246, 116 A. 661, 662 (1922) (recognizing that a trial court has jurisdiction to award counsel fees while the appeal is pending if an application is made to the Supreme Court to remand the papers temporarily to the Superior Court). This Court will entertain a motion to remand with a view toward protecting the rights of litigants while an appeal is pending.

Because the original appeal in this case was docketed on February 15, 2007, and the Family Court was divested of jurisdiction at that time, John argues that absent a remand, the hearing justice lacked the requisite jurisdiction to issue the order of June 29, 2007. Giselda, on the other hand, cites Article I, Rule 7(a) of the Supreme Court Rules of Appellate Procedure, which provides that a justice may make orders "as are needed for the protection of the rights of the parties until the appeal or petition for review shall be heard and determined by the Supreme Court," in support of her contention that the Family Court was vested with jurisdiction and properly exercised that authority to protect the minor children.

This Court has recognized that "Rule 7 expressly authorizes a Family Court justice to make such orders as are necessary for the protection of the rights of the parties pending the appeal." *Centazzo v. Centazzo*, 556 A.2d 560, 563 (R.I.1989). Specific examples of orders that this Court has deemed necessary are (1) an order to allow relocation pending an appeal when it has been determined that relocation is in the best interests of the children, *McDonough v. McDonough*, 962 A.2d 47, 55 (R.I. 2009); (2) the entry of a final judgment of divorce when issues other than the divorce itself are on appeal, *Cardinale*, 889 A.2d at 227, and *Koziol v. Koziol*, 720 A.2d 230, 232 (R.I.1998); and (3) an award of attor-

neys' fees, *Hurvitz*, 44 R.I. at 246, 116 A. at 662.

 Notwithstanding this limited jurisdiction, a party seeking relief for the protection of the parties is not excused from seeking a remand to the Family Court. We have discussed this requirement before:

"[S]ome matters do remain within the original jurisdiction of the trial court even while a case is here on appeal, * * * and Rule 7 of the rules of this [C]ourt recognizes that the trial court can make orders for the protection of the rights of the parties while a case is on appeal. Again, however, once a case has been docketed here it is no longer before the trial court and that court can take no action on it until the papers are remanded there." *Cavanagh*, 119 R.I. at 485–86, 380 A.2d at 968 (citing *Hurvitz*, 44 R.I. at 246, 116 A. at 662).

The only instance in which a request for a remand is not required is for entry of a final judgment of divorce when the divorce itself is not contested on appeal.[13] *Cardinale*, 889 A.2d at 227; *Koziol*, 720 A.2d at 232. In all other instances, once an appeal has been docketed in this Court, the party seeking entry of an order pursuant to Rule 7 must request a remand to the lower court. The morass in which the parties now find themselves is a perfect illustration of the dangers inherent in failing to comply with this settled law.

Because we hold that absent a remand by this Court, the hearing justice was without subject-matter jurisdiction, we need not address the order of June 29,

2007, save to declare it void. Nevertheless, in order to achieve a complete resolution, we shall address the $1,500 payment that was the subject of the hearing justice's finding of contempt. Upon review, we are satisfied that the February 10, 2006 order, which directed John to pay $1,500 per month "from one of three marital assets * * *[,]" required that John make these payments until those specified assets were exhausted or divided. Once the accounts were depleted or distributed between the parties, John had no further obligation to continue making this undesignated payment.[14] However, we decline to order the disgorgement of money that has been paid to Giselda and do so mindful that there is no alimony award in this case. Accordingly, John is no longer required to make the monthly payment of $750 and is relieved of any alimony obligation.

## III

### Conclusion

Seven years after this divorce proceeding was instituted, we declare it at an end. The judgment is affirmed in part and vacated in part.

1. The judgment designating the Wachovia account as marital property is vacated.

2. That portion of the judgment excluding from the marital estate an account held in the defendant's name at Fidelity Investments is affirmed.

3. The decision of the trial justice declaring that the parties shall be jointly responsible for the home eq-

---

**13.** We note that we did not discuss the remand requirement in our most recent decision addressing Article I, Rule 7 of the Supreme Court Rules of Appellate Procedure and interim relief, *McDonough v. McDonough*, 962 A.2d 47 (R.I.2009). In that case, however, the order that the trial justice char-

acterized as interim relief was entered before the appeal was docketed in this Court. Accordingly, no request to this Court for a remand to the Family Court was required.

**14.** We reduced the payment to $750 per month pending the outcome of the appeal.

uity loan in its entirety is vacated. The defendant shall repay the marital estate $27,000 for debt that she incurred after the automatic stay was in place.

4. The decision of the trial justice assigning each party his and her individual credit-card debt is affirmed.

5. The decision of the trial justice assigning 50 percent of the marital estate to each party is affirmed.

6. The decision deferring the sale of the marital domicile is affirmed. The house shall be sold on or about January 1, 2010.

7. The trial justice did not make a valid award of alimony to the defendant and, based on the passage of time, there shall be no alimony in this case. The plaintiff shall be responsible, at the time the house is sold, for one half of the payments made or payable on the first mortgage and one half of all property-tax payments made while this case was pending in the Supreme Court or due at the time of sale.

The writ of certiorari is granted and the order entered by the hearing justice on June 29, 2007, is quashed in its entirety.

The papers in this case shall be remanded to the Family Court for the entry of a decree consistent with this opinion.