Issued November 15, 2019

Corrected January 3, 2020

**Supreme Court**

No. 2018-171-Appeal.
(P 15-1342)

Adam Saltzman           :

v.                 :

Erin Saltzman.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2018-171-Appeal.
(P 15-1342)

Adam Saltzman : 

v. : 

Erin Saltzman. : 

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** The defendant, Erin Saltzman, appeals from a Family

Court final judgment of divorce. Dissatisfied with the judgment, the defendant filed a timely

appeal, raising an array of issues. This case came before the Supreme Court for oral argument

pursuant to an order directing the parties to show cause why the issues raised in this appeal should

not be summarily decided.[1] After hearing the arguments of counsel and thoroughly examining the

---

[1] After the appeal was docketed in this Court, and upon a motion from plaintiff, this case was remanded to the Family Court for the limited purpose of entering a final judgment as to the divorce. However, our review of the record reveals that the trial justice exceeded the scope of the remand by incorporating a consent order with the final judgment that was entered on remand. The consent order included a modification of the child support award that had been provided in the decision pending entry of final judgment that increased the award from $5,500 per month to "$7,500 per month * * * beginning October 1, 2018 for a six-month period, or until the Supreme Court issues its opinion, whichever occurs first." "[T]his Court has been clear that 'lower courts that receive our remand orders may not exceed the scope of the remand or open up the proceeding to legal issues beyond the remand.'" *State v. Arciliares*, 194 A.3d 1159, 1162 (R.I. 2018) (deletion omitted) (quoting *Butterfly Realty v. James Romanella & Sons, Inc.*, 93 A.3d 1022, 1031-32 (R.I. 2014)). Here, our order of remand was *very specific*, and the trial justice should not have expanded the issues on remand. However, because the additional issues that were addressed on remand do

record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Family Court, and we remand the case to that tribunal for further findings.

## I

### Facts and Travel

The plaintiff, Adam Saltzman, and the defendant, Erin, were married on September 26, 2009, and two minor children were born of the marriage.[2] Adam filed a complaint for divorce from Erin on July 30, 2015, citing irreconcilable differences that had led to the breakdown of the marriage.

At the time of their marriage both parties resided in New York City. During the early days of their marriage in 2009, Erin and Adam were both employed; he as a physician and she as a buyer for Macy's department store. However, in May 2011, when Adam accepted a two-year fellowship at Massachusetts General Hospital, Erin gave up her job and the couple relocated to Cambridge, Massachusetts. In 2013, they relocated again, this time to Barrington, after Adam accepted a position at Southcoast Health in Massachusetts. At the time of trial, Adam was the sole breadwinner through his work as a cardiologist, and he earned a salary of $550,000 per year. Erin was the primary caregiver for the children.

According to the testimony at trial, the couple began to experience increasing tension in their relationship. The domestic difficulties were no doubt exacerbated by Erin's frequent trips to

---

not affect the appeal, we need not address this issue any further. At oral argument, both parties made representations that no other issues are currently pending before the Family Court.

[2] In this case, we refer to the parties as Adam and Erin. This is for the purpose of clarity only because they share the same last name, and we intend no disrespect by using their first names.

her family's home in Ohio. During one of those trips, Adam began an illicit relationship with another woman. In fact, in his decision, the trial justice found that Adam had been "less than candid with his responses in deposition testimony and discovery as to his sexual involvement with another woman, which he later modified prior to trial." Although the trial justice found that Adam's infidelity ultimately led to the couple's separation, he also determined that each party had contributed to the breakdown of the marriage.

At the end of the proceeding, the trial justice granted the complaint for divorce of each party based on irreconcilable differences that had led to the irremediable breakdown of the marriage. In his decision pending entry of final judgment, the trial justice awarded the parties joint custody of the minor children, with physical placement with Erin. However, he denied Erin's request to relocate to Ohio with the children. The trial justice also ordered Adam to pay (1) the costs to maintain the marital domicile for a period of thirty months, at which point the home would be sold; (2) alimony in the amount of $50,000, which would be treated as a contribution towards the costs of maintaining the marital home for thirty months; and (3) child support in the amount of $5,500 per month. With respect to the marital estate, the trial justice ordered that the marital domicile be sold at the expiration of the thirty-month period and that Erin would receive 70 percent of the net proceeds and Adam the remaining 30 percent. The balance of the marital estate was to be divided evenly between the parties. The trial justice also ordered both parties to pay their own attorneys' fees except for the sanction the trial justice imposed on Adam for his lack of candor. Finally, the court awarded Adam reasonable visitation rights with the minor children, including alternate weekends and overnight visitations on Mondays and Wednesdays. Erin appealed, and we remanded the case for entry of final judgment, which occurred on December 5, 2018.

## II

## Issues on Appeal

Before this Court, Erin argues that the trial justice erred in (1) denying her request to relocate with the children to Ohio; (2) awarding temporary use of the home to her for thirty months, after which the home would be sold; (3) the calculation of child support; (4) the award of attorneys' fees and costs; (5) the equitable distribution of marital property; (6) setting the visitation schedule; and (7) the amount of sanctions imposed on Adam. We address each issue in turn.

## A

## Relocation

Erin argues that the trial justice abused his discretion when he denied her request to relocate to Ohio with the minor children. Specifically, Erin asserts that the trial justice failed to adequately consider Erin's enhanced housing and employment opportunities in Ohio; the short time the children have lived in Rhode Island; the difference in degree of past parental involvement; and the support network available to the children in Ohio, as opposed to the lesser support network available to them in Rhode Island.

## Standard of Review

"It is a firmly established principle in family law that the paramount consideration in relocation cases is the best interests of the child or children." *Ainsworth v. Ainsworth*, 186 A.3d 1074, 1081 (R.I. 2018) (emphasis omitted) (quoting *DePrete v. DePrete*, 44 A.3d 1260, 1271 (R.I. 2012)). "The determination of what is in the best interests of the children is 'appropriately placed in the sound discretion of the trial justice.'" *Id.* (quoting *Dupré v. Dupré*, 857 A.2d 242, 256 (R.I. 2004)). "On review, this Court will not disturb the findings of fact made by a justice of the Family Court with respect to the issue of custody and the best interests of the children unless the hearing

justice abused his or her discretion in making such findings." *Id.* (brackets omitted) (quoting *DePrete*, 44 A.3d at 1270). "Accordingly, we will affirm the Family Court's ruling 'unless the trial justice's factual findings overlooked or misconceived material evidence or were clearly wrong.'" *Id.* (quoting *McDonough v. McDonough*, 962 A.2d 47, 52 (R.I. 2009)).

In evaluating the best interests of the child as to relocation, the trial justice is required to address the eight factors articulated in *Dupré*. *Ainsworth*, 186 A.3d at 1082. The trial justice also must consider the eight factors articulated in *Pettinato v. Pettinato*, 582 A.2d 909 (R.I. 1990). *Id.* "[W]e accord deference to the sound discretion of the hearing justice in assessing and weighing both sets of factors because it is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis." *Id.* at 1083 (brackets and deletion omitted) (quoting *Dupré*, 857 A.2d at 257).

In *Dupré*, we identified the following eight factors upon which evidence should be presented in cases involving the relocation of children:

> "(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent.
> "* * *
> "(2) The reasonable likelihood that the relocation will enhance the general quality of life for both the child and the parent seeking the relocation, including, but not limited to, economic and emotional benefits, and educational opportunities.
> "(3) The probable impact that the relocation will have on the child's physical, educational, and emotional development. Any special needs of the child should also be taken into account in considering this factor.
> "(4) The feasibility of preserving the relationship between the non-relocating parent and child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
> "* * *
> "(5) The existence of extended family or other support systems available to the child in both locations.
> "(6) Each parent's reasons for seeking or opposing the relocation.
> "* * *

"(7) In cases of international relocation, the question of whether the country to which the child is to be relocated is a signatory to the Hague Convention on the Civil Aspects of International Child Abduction will be an important consideration.

"(8) To the extent that they may be relevant to a relocation inquiry, the *Pettinato* factors also will be significant." *Dupré*, 857 A.2d at 257-59 (internal citations omitted).

In *Ainsworth*, this Court repeated that "'no single *Dupré* factor is dispositive' and that 'each case will present its own unique circumstances that a trial justice must balance and weigh as he or she deems appropriate.'" *Ainsworth*, 186 A.3d at 1082 (brackets omitted) (quoting *Valkoun v. Frizzle*, 973 A.2d 566, 577 (R.I. 2009)).

In *Pettinato*, we identified the following eight factors to be weighed in the analysis of the best interests of the child:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Pettinato*, 582 A.2d at 913-14 (internal footnotes omitted).

In assessing the *Pettinato* factors, the trial justice "must consider a combination of and an interaction among all the relevant factors that affect the child's best interests." *Ainsworth*, 186 A.3d at 1083 (quoting *Pettinato*, 582 A.2d at 914).

**Analysis**

After a careful review of the record, it is our opinion that the trial justice carefully considered and weighed the *Dupré* and relevant *Pettinato* factors and, therefore, properly exercised his discretion.

First, the trial justice weighed an employment offer made to Erin by her father. Erin testified at trial that, according to the terms of the offer, she would earn $90,000 per year; but the trial justice found that that fact alone did not demand relocation to Ohio because Erin introduced no evidence that her employment opportunities in Ohio outweighed her opportunities in Rhode Island. Second, the trial justice analyzed the children's connection to Rhode Island and found that, despite the limited time the children had lived in this state, the court was not convinced that their emotional well-being would be enhanced by a move to Ohio because the children appeared to be "flourishing" in their present environment in Rhode Island.

Third, he determined that, although the fact that Erin was the primary caregiver was relevant to the determination of what was in the best interests of the children, he did not limit the analysis governing that determination to the past but he also looked at the current relationship each parent had with the children. *See Ainsworth*, 186 A.3d at 1084 (holding that it was appropriate for the trial justice to consider a parent's current status as well as "past misdeeds" when evaluating the best interests of the children). Here, the trial justice found that Adam similarly has a meaningful relationship with the children and that he was determined to maintain that relationship. The trial justice found that the involvement of both parents with their children was both extensive and admirable. Erin has not pointed to any evidence in the record to contradict the trial justice's findings in that regard.

Fourth, Erin argues that the trial justice failed to take into account Adam's considerable income when he discussed the feasibility of the non-custodial parent maintaining a relationship with a relocated child through visitation.[3]  However, we have said that "the trial justice need not refer to every piece of evidence, [rather] he must refer to the specific evidence that prompted his decision[.]" *H.J. Baker & Bro., Inc. v. Orgonics, Inc.*, 554 A.2d 196, 202 (R.I. 1989).  It is clear that the trial justice's focus was on the transportation difficulties that would arise from the relocation of the minor children, including bearing the transportation and lodging costs that would be incurred in travelling to Ohio to visit with the children, the ages of the children, and Adam's current employment obligations.  It may be true that Adam's income may allow him to absorb those costs, but the facts considered by the trial justice are equally relevant and their weight is not diminished by Adam's enhanced financial condition.  Therefore, it cannot be said that the trial justice did not act within his discretion when considering *Dupré*'s feasibility factor.

Finally, we conclude that Erin's argument that the trial justice failed to consider the lack of a support system available to the children in Rhode Island is wholly without merit.  Although the trial justice found that the children would have an extensive support system in Ohio, he also found that the children had a more than sufficient support system in their present circumstances.  Erin's contention that there is no support system in Rhode Island may be technically true, because Adam's family resides in Massachusetts; however, the trial justice found the distance between the children's home in Barrington and Adam's family to be reasonable.  Erin has not pointed to anything in the record that would undermine the trial justice's finding.

---

[3] The trial justice made a finding of fact with respect to Adam's income in another part of his decision.

In our opinion, the trial justice diligently reviewed all the testimony, thoroughly considered the *Dupré* and *Pettinato* factors, and made forty-four findings of fact that were amply supported by the record. As we have held, we accord great deference to the sound discretion of the trial justice in assessing and weighing these factors because "it is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis." *Ainsworth*, 186 A.3d at 1083 (brackets and deletions omitted) (quoting *Dupré*, 857 A.2d at 257).

Therefore, we can find no fault with the decision of the trial justice when he denied Erin's motion to relocate to Ohio with the children.

**B**

**Alimony/Temporary Use of the Marital Home**

Erin argues that the trial justice abused his discretion in the award of alimony. Specifically, Erin maintains that the trial justice erred not only in the amount of alimony that he awarded, but in the method of payment as well.

**Standard of Review**

"The grant of alimony is authorized by statute." *Meyer v. Meyer*, 68 A.3d 571, 585 (R.I. 2013). General Laws 1956 § 15-5-16 provides that "[a]limony is designed to provide support for a spouse for a reasonable length of time to enable the recipient to become financially independent and self-sufficient." Section 15-5-16(c)(2). "In addition, we have stated that 'alimony is a rehabilitative tool intended to provide temporary support, and is based purely on need.'" *Meyer*, 68 A.3d at 585 (deletion omitted) (quoting *Thompson v. Thompson*, 973 A.2d 499, 512 (R.I. 2009)). We have also said "that the nature of alimony 'is prospective not retroactive.'" *Id.* (quoting *Thompson*, 973 A.2d at 512).

> "In fashioning an alimony award, the trial justice must consider the following statutory factors:

"(i) The length of the marriage;
"(ii) The conduct of the parties during the marriage;
"(iii) The health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and
"(iv) The state and the liabilities and needs of each of the parties." *Id.* (quoting § 15-5-16(b)(1)(i)–(iv)).

"We review an award of alimony by a trial justice pursuant to an abuse of discretion standard." *Meyer*, 68 A.3d at 586. "Additionally, if the trial justice 'did not overlook or misconceive material evidence, and if he [or she] considered all the requisite statutory elements' set forth in § 15-5-16, we will not disturb the discretionary award of alimony." *Id.* (quoting *Thompson v. Thompson*, 642 A.2d 1160, 1162 (R.I. 1994)).

**Analysis**

Erin contends that the trial justice should have awarded a higher amount of alimony to her because of Adam's significant income as well as the amount of time that she has been unemployed. Because Erin, who has been gainfully employed in the past, has not pointed to anything in the record that would indicate that she would require more than thirty months to secure employment, we are not persuaded by this argument. The trial justice found that she was employable based on her prior work history, earning capacity, health, and age. Indeed, Erin testified that she has a degree in marketing and a job offer from Ohio. Nothing in the record indicates that the trial justice misconceived or overlooked evidence in arriving at that conclusion.

With respect to the method of payment of alimony, Erin argues that it was improper for the trial justice to grant temporary use of the former marital domicile to her but also to consider payments from Adam to her to maintain the home to be alimony. We do not agree. Nothing in § 15-5-16 forbids such an arrangement. That statute defines alimony as "payments *for* the support of either the husband or the wife." Section 15-5-16(c)(1) (emphasis added). There is no

- 10 -

requirement that the payment be made directly to the spouse. A trial justice is permitted to fashion a proper alimony award in his own discretion to meet the needs of a particular case, so long as the trial justice adheres to the statutory factors. *See Meyer*, 68 A.3d at 586. The trial justice's award, which permits Erin to remain in the home while she seeks employment, was within his discretion and was a reasonable method of satisfying the intent of rehabilitative alimony.

After thoroughly reviewing the record, we conclude that the trial justice acted within his discretion in his alimony award. The trial justice considered all of the statutory factors in reaching his decision and made the relevant findings of fact. Therefore, we will not disturb the trial justice's award of alimony.

## C

### Child Support

Erin next argues that the trial justice erred in his award of child support because he did not award the proper minimum child support amount pursuant to the Rhode Island Family Court Child Support Guidelines.

### Standard of Review

"We consistently have stated that the guiding principle in setting a child-support award is to balance the needs of the child against the financial ability of the absent parent." *Trojan v. Trojan*, 208 A.3d 221, 232 (R.I. 2019) (quoting *Tamayo v. Arroyo*, 15 A.3d 1031, 1036 (R.I. 2011)). "A court may consider all relevant factors, including the financial resources and needs of the child and each of the parents and the Family Court may consider every factor that would serve to reveal in totality the circumstances and conditions bearing on the welfare of the children." *Id.* (quoting *Tamayo*, 15 A.3d at 1036).

**Analysis**

After reviewing the record, we can discern no basis for Erin's argument. The Rhode Island Family Court Administrative Order sets the child support amount for a couple with two children and income exceeding $35,000 per month, the highest amount provided in the guidelines, at $4,202 per month. The record reveals that Adam earns $550,000 per year, or about $46,000 per month. Thus, he earns 31 percent more in monthly income than the highest income amount specified in the guidelines. We note that the trial justice's child support award of $5,500 is approximately 31 percent in excess of the $4,202 set forth in the guidelines for a combined income of over $35,000 per month. In our opinion, this award is well within the discretion of the trial justice, and Erin has failed to point to anything that suggests otherwise. We note that no such proportionality is required in every award of child support. The focus must always be on the needs of the children, the financial ability of the absent parent, and all other relevant factors. *Trojan*, 208 A.3d at 232.

We therefore affirm the trial justice's child support award.

**D**

**Attorneys' Fees and Costs**

Erin contends that the trial justice strayed beyond the bounds of his discretion because he declined to award attorneys' fees and costs aside from the fees relative to Adam's lack of candor. She argues that, because the trial justice never made a finding as to her earning capacity or how she would be able to compensate her attorney, there was an insufficient basis to deny her request for attorneys' fees. We agree.

**Standard of Review**

"[T]he award of counsel fees in a divorce action is governed by § 15-5-16." *Meyer*, 68 A.3d at 586. "[I]t is well established that, before awarding counsel fees, the trial justice must

- 12 -

determine that the party seeking the award is without funds or property available to pay the fees and that the spouse who will be charged with payment of the fees has the financial ability to satisfy the obligation." *McCulloch v. McCulloch*, 69 A.3d 810, 826 (R.I. 2013) (quoting *Thompson*, 642 A.2d at 1165). "The issue of whether or not to award counsel fees in a particular case is confided to the sound discretion of the trial justice, and we review a trial justice's ruling with respect to such fees under the abuse of discretion standard." *Meyer*, 68 A.3d at 587.

**Analysis**

There is nothing in the record that would demonstrate that the trial justice made any findings with respect to Erin's ability to pay her attorneys' fees, as is required by *McCulloch*. The only relevant findings of fact on the record indicate that Erin has not worked since 2011 and that she is capable of employment. Without a finding as to Erin's ability to pay for her legal representation during the course of the divorce proceedings, we are constrained to vacate the trial justice's decision denying Erin's request for attorneys' fees and remand this issue to the Family Court.

**E**

**Distribution of Marital Estate**

Erin maintains that the trial justice incorrectly weighed the factors delineated in § 15-5-16.1 when he distributed the marital estate equally to each party after allocating 70 percent of the proceeds from the sale of the marital domicile to Erin and the remainder to Adam.

**Standard of Review**

"It is well settled that 'the equitable distribution of property in a divorce action involves three steps: (1) determining which assets are marital property; (2) considering the factors set forth in G.L. 1956 § 15-5-16.1(a); and (3) distributing the property.'" *McCulloch*, 69 A.3d at 820

(brackets omitted) (quoting *Tondreault v. Tondreault*, 966 A.2d 654, 662 (R.I. 2009)). "The trial justice is accorded broad discretion with respect to the equitable distribution of marital assets; consequently, we will not overturn the trial justice's distribution unless it is demonstrated that he or she has abused his or her discretion." *Id.* at 818-19 (brackets omitted) (quoting *Tondreault*, 966 A.2d at 659). "As long as the trial justice did not overlook or misconceive relevant and material evidence, and as long as he or she considered the requisite statutory elements set forth in § 15-5-16.1, we will not disturb the trial justice's assignment of property." *Id.* at 819 (quoting *Tondreault*, 966 A.2d at 659).

**Analysis**

Erin's primary argument is that the trial justice failed to consider Adam's infidelity. However, we have previously stated that "'fault' as such has been largely eliminated as a factor in Rhode Island divorce proceedings[.]" *Tarro v. Tarro*, 485 A.2d 558, 561 (R.I. 1984). "'Conduct' is not limited to bad conduct or marital fault but also encompasses good conduct during the term of the marriage." *Id.* "Furthermore, a single statutory factor should not control a trial justice's decision." *Id.* Although Adam's infidelity is certainly relevant to the inquiry, it does not follow that it should outweigh all other factors. In this case, we conclude that the trial justice permissibly exercised his discretion in not placing more emphasis on this factor.

Moreover, after thoroughly reviewing the record, it is our opinion that the trial justice acted within his discretion in the equitable distribution of the marital estate. The trial justice determined the assets of the marital estate, considered the factors outlined in § 15-5-16.1(a), and distributed the marital estate. Consequently, we affirm the decision of the trial justice with respect to the equitable distribution of the marital estate and domicile.

- 14 -

# F

## Visitation Schedule

Erin further argues that the trial justice erred when he granted Adam two midweek overnight visits per week, because, she argues, overnight visits are not in the best interests of the children.

## Standard of Review

We review visitation awards in the same vein as custody disputes. *Vieira v. Hussein-Vieira*, 150 A.3d 611, 616 (R.I. 2016). The trial justice is required to consider the *Pettinato* factors in determining the best interests of the child. *Id.* "If the Family Court has properly considered what custody arrangements are in the best interests of the child, this Court will not disturb such a discretionary decision." *Id.* (brackets omitted) (quoting *Chiappone v. Chiappone*, 984 A.2d 32, 38 (R.I. 2008)). "We have recognized that 'it is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis, and his or her discretion in this regard should not be unduly constrained.'" *Id.* (brackets omitted) (quoting *McDonough*, 962 A.2d at 52).

## Analysis

As he did with respect to the relocation issue, the trial justice weighed the *Pettinato* factors, carefully considered the evidence, and made his determination about the visitation schedule. Nothing Erin has indicated to us casts any doubt on the soundness of the trial justice's decision.

We affirm the decision of the trial justice in setting the visitation schedule.

# G

## Sanctions

Erin argues that the trial justice failed to impose an appropriate sanction on Adam for "his lack of candor" about his marital infidelity. Erin contends that the $3,000 sanction levied on Adam is insufficient for the mendacious statements that he made while he was under oath.

## Standard of Review

"Generally, 'an appellate court will reverse a trial court's imposition of a sanction for a litigant's misconduct only if the trial court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Michalopoulos v. C & D Restaurant, Inc.*, 847 A.2d 294, 300 (R.I. 2004) (quoting *Lett v. Providence Journal Co.*, 798 A.2d 355, 367 (R.I. 2002)). We therefore review a trial justice's decision concerning sanctions under an abuse of discretion standard. *See id.*

## Analysis

We conclude, after reviewing all the attendant circumstances in the record, that the trial justice acted within his discretion in determining the amount of the sanction. Although making false statements under oath is an egregious violation, it is our opinion that there was justification for the amount of the sanction imposed by the trial justice, especially considering other facts in the record. Even though a more severe sanction may well have been warranted, it was the trial justice who was in the best position to determine the weight of the sanction, and nothing in the record suggests that the trial justice failed to adequately assess the seriousness of Adam's conduct. Additionally, the trial justice required that Adam pay Erin's attorneys' fees with respect to her counsel's diligent efforts to discover the truth.[4]

---

[4] The amount of those fees has not as of yet been ruled on by the trial justice.

Therefore, we affirm the trial justice's decision regarding the sanction imposed.

## III

## Conclusion

For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Family Court. We remand this case to the Family Court and order the trial justice to make findings of fact regarding whether to award attorneys' fees to Erin under § 15-5-16, and to render a decision based on such findings. At that time, the trial justice shall also assess the amount of fees that Adam is responsible for paying in connection with Erin's attorney's time and efforts as a result of the lack of candor on Adam's part as it pertains to his affair. The record shall be remanded to the Family Court.



ftrSTATE OF RHODE ISLA PROVIDENCE

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Adam Saltzman v. Erin Saltzman. |
| **Case Number** | No. 2018-171-Appeal. <br> (P 15-1342) |
| **Date Opinion Filed** | November 15, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice John E. McCann, III |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Robert S. Parker, Esq. <br> Deborah M. Tate, Esq. <br> For Defendant: <br><br> William J. Lynch, Esq. |